We'll hear argument next in case 19-357, City of Chicago v. Fulton. Mr. Goldblatt. Mr. Chief Justice, and may it please the Court, this case presents the question whether the Bankruptcy Code's automatic stay requires a creditor in lawful possession of a state property when a bankruptcy petition is filed to return that property to the debtor immediately or else pay damages. It does not. The automatic stay freezes the state of affairs as of the bankruptcy filing by enjoining creditors from taking post-petition acts to improve their position vis-à-vis the debtor. As this Court has repeatedly observed, the automatic stay's purpose is to preserve the status quo. It does not require creditors to turn over property lawfully in their possession. An entirely separate provision of the Code, the turnover provision addresses that situation. But unlike the automatic stay, the turnover provision does not operate as an injunction or mandate the payment of damages if property is not immediately turned over. The turnover provision contains a number of statutory exceptions and defenses. For example, a creditor is not required to turn over an asset if the debtor cannot provide adequate protection for the creditor's interest in the asset. A creditor that contends in good faith that an asset is not subject to turnover is entitled to judicial process to resolve that dispute without owing damages if the debtor ultimately prepares. Respondent's contrary argument fails for multiple reasons. First, reading the automatic stay to require turnover contravenes the ordinary meaning of the term stay, which is status quo preserving. Second, it would render the actual turnover provision superfluous and would nullify the statutory exceptions and defenses to turnover. Finally, no one contends that the automatic stay imposed the turnover duty before the 1984 amendment that added the words exercise control. Reading that amendment to the automatic stay to effect a sea change in turnover practice violates this Court's repeated admonition that changes to the Bankruptcy Code should not be read to disrupt established practice absent an indication that Congress so intended. Counsel, you agree that you're exercising control over the car. Your argument is simply that exercising control is not an action, right? Mr. Chief Justice, we don't intend to... Our position doesn't turn on fine distinction between action and inaction. Our fundamental position is that the entire statutory phrase, act to exercise control, is a prohibition on actions that change the status quo. And because what we did preserve the status quo, it is not inconsistent with the command of the automatic stay. So we should understand that... I understood your brief to put a different emphasis on it. We should understand that you're covered by subsection three because you are engaged in an act. Your Honor, we think that the question here about whether or not this is or isn't an act, recall the discussion in your Honor's opinion in NFIB in which you correctly observed that drawing the distinction between action and inaction at the extremes devolved into the work of metaphysical philosophy. And just like you observe the Commerce Clause does not require a court to engage in such an analysis, we think the same is true of the Bankruptcy Code. We think that as long as nothing is happening... Well, if I could just interrupt. Once the debtor asks you to give back the car, that resolves this metaphysical debate, right? You make the action at that point to decide either to return it or not, correct? Your Honor, our fundamental position is that the work of the automatic stay, as long as we're preserving the status quo, is not violated. Now, it is true that the debtor... There is a mechanism in the Bankruptcy Code by which the debtor can get back the car. That's the turnover provision. And the debtor can initiate... Thank you, counsel. Justice Thomas? You do agree, though, counsel, that the code would prevent you from... Even though you do have control, it would prevent you from, for example, disposing of the cars. That's correct, Justice Thomas. Our disposal of the cars, our sale of the cars, anything that would alter the status quo as between the debtor and creditor would violate the automatic stay. That's the construction of the automatic stay that this court has given in cases going back to Continental, Illinois in 1935 and running for Rixon and Taggart in the last few terms. So that's entirely correct, and that is the work of the automatic stay in bankruptcy. So in his opinion, in Whiting Poole's, Justice Blackman makes a distinction between the possessory interest and other interests in the property. Do you think that Whiting Poole has an effect on this case, on your case? Justice Thomas, yes. Whiting Poole is entirely correct and consistent with our view. What Justice Blackman said for this court, what Judge Friendly said for the Second Circuit in the case that this court affirmed, said that A, the entire asset becomes property of the estate. So it rejected the government's argument there that the possessory interest stayed out of the estate and was not subject to turnover, but B, turnover could proceed subject to the creditor's ability to seek adequate protection. In that regard, Whiting Poole simply set out what was the understanding of how turnover worked prior to the 1984 amendment to the automatic stay, and nothing in the amendment to the automatic stay changes the operation of turnover in that regard. All right. Thank you. Justice Breyer. Oh, I just am having a hard time understanding the following. If I look at 542, it basically says that a creditor like you, your client, who has some property belonging to the debtor, that's a car, shall deliver to the trustee the property. They're supposed to deliver it to the trustee, unless it falls within the exceptions. I don't think you're a life insurance company. I don't know what the exception would be. And now you said, oh, that's right. But then the question here is whether the section before that, which has it to stay without saying what you do with it, says that you exercise control over the car, and stay means you ought to turn it over. What difference does it make? In either case, you have to turn it over. Justice Breyer, if I may, two responses, if I may. First, on the question, what is the defense? Section 542 says expressly that the turnover power, the turnover obligation applies to property that is, it says it is subject to section 363E, subject to section 363, and section 363E provides that the property is not subject to the trustee's use if the debtor cannot provide adequate protection to the creditor. So here there was a good faith dispute about whether this was subject to turnover. In this case, there was a real dispute about the way in which the city's possessory liens operated, and the position that we took, which had prevailed in district court until the very decision below, said this property was not subject to turnover. So your point is, is this right, that your point is if we have to use 542, we have these people's cars, they never paid their parking ticket, we give it back to them, that's the last we'll see of them. We'll never get our parking ticket money, unless they put up a bond or something, which is a little complicated. So Justice Breyer, if 362 applies, hey, we just have to give them back the car, and that's the last we'll ever see of them. So Justice Breyer, this is, the question of turnover is the, I think the answer to your question, Justice Breyer, with respect is that the question of turnover is the subject of Section 542, and while that is a shall command, that provision doesn't contain injunctive language. And Justice Breyer, as you wrote for a unanimous court just 16 months ago, in the Taggart case, where there is a, even in the discharge injunction context, where the statute does use injunctive language, where there is fair ground of doubt, a court will not resort to contempt to punish a party that exercises its rights in a position where it's taking positions in good faith. Justice Alito? Yes. You say that the key is whether the status quo is being preserved or not. I think that the whole practice is to keep cars like the cars at issue here in, and basically unguarded lot in a remote location, so that there isn't very much preventing somebody whose car is there from entering and driving off with it. But when the city hears about a particular case and thinks that, let's say it's a particularly valuable car and thinks that there's a real danger that the just that, go there and drive off with the car. The city relocates that car to a different location where it's subject to 24 hour guard. Would that be an alteration of the status quo? Not the relevant status quo, Justice Alito. In the bankruptcy context, the automatic stay does a particular thing. It freezes the relationship between the debtor and its creditors as of the liabilities, a balance sheet, so to speak. That balance sheet is frozen. No one can engage in self-help during the bankruptcy case to change that. Instead, that's addressed through the bankruptcy process under the supervision of the bankruptcy judge. If anyone takes any action to improve their position, that would violate the state. Here, in your hypothetical, the car was that remained the case. What the city was doing to preserve the status quo does not violate the automatic stay. Well, what work did the addition of the exercise control language do with respect to tangible objects? So, as I said in response to Justice Thomas's question with respect to tangible property, if here the city had disposed of the car or had sold the car, those would be the same. Can you give me examples of what Congress might have had in mind with respect to intangible property when it added this language? Sure. The paradigmatic example, for example, would be a derivative action. If a party wanted to take over an estate cause of action and go to state court and say the estate ought to be pursuing the cause of action that it's not and try to take over that claim, bringing that derivative action would be an act to exercise control over a state property. There were cases involving the termination of a lease agreement, for example. Another piece of property that arguably isn't subject to possession, but those actions would violate the automatic stay after the words exercise control were added in bad weather or to be broken into or bumped into while in the city's possession. Does that change the status quo? So, Justice Sotomayor, I don't believe those actions or violations of duties or what have you violate the automatic stay. I do believe that non-bankruptcy law and in this context, the UCC imposes duties on secured creditors to exercise appropriate care over property that they have repossessed. May I stop you for a moment because I'm limited in time. By your theory right now, the plaintiff must start an adversary proceeding, which has a huge amount of costs associated with them. As I understand it, adversary proceedings take several months and to what end? Meaning you would go to court and say, I have a lien, they should give me security. You could do that now, even if you had to turn over the car immediately. How can we ensure that these processes would go fast enough to save the debtor from not being able to rehabilitate? Because for many of these people, the cars are the only means they have to get to work. So, Justice Sotomayor, bankruptcy judges have ample discretion and in my experience, exercise it quite wisely. Well, they didn't in the council. I want to point out that it took weeks. It's not weeks after bankruptcy orders in these cases to turn over the cars for the city to respond. So, Justice Sotomayor, with respect, in this case, there was never even a turnover action brought, only an action for violation of the stay. In most cases, these matters are worked out pretty simply and consensually. But to respond to your sort of analytic question of, does the system work? It's a fair question, but the answer is yes. Bankruptcy courts have plenty of ability to move these things quickly, to set response dates promptly, and to ensure that to the extent there's a dispute about adequate protection, that gets worked out and then the cars are turned over. But the city is entitled, a secured creditor is entitled to, for example, make sure that there's insurance so that if the car is destroyed while the debtor has possession of it, its security interest isn't lost. That's how this normally works and it normally works quite well. Thank you, counsel. Justice Kagan? Mr. Goldblatt, it seems as though most of your arguments this morning is about the function of the automatic stay and the fact that, in your view, what it's supposed to do is to keep the status quo in place. And that's what you think besides this case. But I'm really wondering about the premise here. I mean, keeping the status quo in place, that's not in the statutory language. It is something that the court has said multiple times and mostly it makes complete sense. But I wonder whether you're confusing a means and an end, that the real function of an automatic stay is to consolidate the estate so that it can be redistributed. Now, in most cases, consolidating the estate is going to mean keeping the status quo in place. But in this unusual circumstance, consolidating the estate means changing the status quo. And we should understand the bankruptcy code to accept that where that change is necessary to consolidate the estate. So, Justice Kagan, with respect, I think that analysis sort of jumbles different provisions of the bankruptcy code. We think that the analysis is that what section 362 of the automatic stay does is preserve the status quo. Now, to be sure, the consolidation or marshaling of assets of the estate is work to be done in a bankruptcy case. We think that section 542, the turnover provision, is where that work is done. And section 542 has specific exceptions and defenses. And there's an established way in which it works. After all, no one here contended that before 1984, when the words exercise control were added to the automatic stay, that the automatic stay did any of this work. But this was always, since the dawn of time, the work of a trustee in bankruptcy to marshal the assets of the estate for the benefit of its creditors. And the way it worked is that the turnover provision gives one the authority to come into court and say, you're holding my thing. May I have it, please? And if the answer is, I've got no defense, it should be turned over. And if there are disputes to be worked out, those are addressed by the bankruptcy court. The bankruptcy court resolves it and then issues an order directing turnover, which if a creditor fails to comply is punishable with contempt. And so that's how that work is done. But it's respectfully incorrect. Thank you, Justice Kagan. Justice Gorsuch. Good morning, counsel. I know your client's practice of holding on to cars is well-established and highly controversial. But looking to the bankruptcy code, I guess my question for you is, assume we agree with you about the scope of 362. Is there anything that would prohibit a debtor from seeking exactly the same sort of relief under 542 and 105? So, Justice Gorsuch, we think that the answer to that question is provided by the unanimous opinion of this court in Taggart just 16 months ago, where the court said that the discharge injunction, which is a statutory provision of the bankruptcy code that has injunctive language, unlike 542, that where there is fair ground of doubt about whether the action was a violation, that contempt authority is not available. We think it follows a fortiori. If a statute that has injunctive language can't be punished with contempt or damages where there's fair ground of doubt, then it must follow that 542 also isn't punishable by contempt where there is fair ground of doubt. Now, if there's not fair ground of doubt, if there's just bad faith conduct where someone says, I know 542 requires me to turn this over to you. I just don't feel like it. Come and get me. Whether sanctions could be awarded in that case raises a different and harder question not presented here, but there is no question that that is all about the scope of 542. And the question presented by this case is whether section 362, the automatic stay, essentially allows an end run around all of that, avoiding those questions, skipping over the defenses and providing an automatic claim for damages, attorney's fees, and sometimes... I'm sorry to interrupt. Our time is very short, and I would appreciate maybe a shorter, maybe even possibly a yes or no answer. Is there anything that would prohibit a court, bankruptcy court, from ordering the turnover of a car from the city of Chicago? I know it loves to hold on to these things, but there's an order under 542 saying discharge it. Is there anything that would prohibit that? No, that's the answer. The one word answer is no. The five word answer is that's Justice Kavanaugh. Thank you, and good morning, Mr. Goldblatt. Just to focus on the text again, if you're holding property to state, aren't you acting to exercise control over the property? Justice Kavanaugh, our view is consistent with this court's long line of jurisprudence that that isn't the type of exercise control that is prohibited by the automatic stay. The automatic stay is... One way of thinking about it... Just in ordinary language, though, if you're holding the property, you're acting to exercise control. Just ordinary language. You're exercising control, but the language stay, which stays as to exercise control, isn't violated. Okay. Second, you said, I think, that the system is working well here, the way under your interpretation, but the ACLU brief and Amicus brief and others suggest that at least what Chicago's doing is seizing cars. People have to declare bankruptcy to get their cars back. They can't get their cars back and get on their feet to get to work, which they need to work to enable their debt repayment. If the goal of bankruptcy is fresh start, according to this brief, Chicago's system is thwarting that, making the Northern District of Illinois a leader in the country in non-business Chapter 13 bankruptcy filings because of what Chicago is doing. I just want to give you a chance to respond to that. Sure. Two points, if I may, Justice Kavanaugh. We understand that the ACLU disagrees with the city's policy judgments regarding how to enforce its parking laws. For what it's worth, since the time of the events at issue, there have been some changes to those policies made by the city council, which we respect as the proper body to make policy with respect to parking enforcement, with respect to traffic enforcement. With respect to the way Chapter 13 works, what actually happens in many of these cases, Chapter 13 is designed to permit a debtor to maintain their property while coming up with a plan to repay their creditors. In light of the Seventh Circuit's rulings here, the practice has grown up in Chicago where people file for bankruptcy, not with any intent to complete a five-year plan to repay their creditors, but simply as a device to get their car and thereafter dismiss their cases. You have about a minute to wrap up. Thank you, Mr. Chief Justice. We think the clearest answer to the questions this court has raised are likely set out in the D.C. Circuit's decision in Inns Law. The critical language is there on page 1473 of Volume 932 of F2. There, Judge Stephen Williams made three points. First, the automatic state operates to preserve the status quo, quote, to make sure that creditors do not destroy the bankruptcy estate in their scramble for relief. Second, because willful violations of the state subject creditors to compensatory damages, costs, and attorney's fees, it is, quote, difficult to believe that Congress intended a violation whenever someone already in possession of property mistakenly refuses to capitulate to a debtor's contention that the underscore the improbability that Congress would have intended the automatic state to impose its own turnover obligation, since that would create a, quote, kind of universal end run around the limits of turnover. He had that exactly right, and for those reasons, the judgment below should be reversed. Thank you, counsel. Ms. Sinsdach? Mr. Chief Justice, and may it please the court, Section 362A.3 is most naturally read to preclude acts to gain possession or control over estate property. Accordingly, a creditor may not repossess a debtor's vehicle herself, nor may she act to exercise control over the vehicle by directing a tow company to take the vehicle to the company's lot. Respondents assert that Section 362A.3 should also be read to compel imposes a stay, and the term stay denotes the command to preserve the status quo. Section 362A.3 therefore can't be read to compel a creditor to alter the status quo. Second, if Section 362A.3 is read to require a creditor to deliver property to the debtor, it will effectively override the exceptions to turnover in Section 542. This court rejected such a reading of the automatic stay provision in front, and it should do the same here. Counsel, I want to try to get a better handle, at least for myself, on what's at stake here. The creditor is not going to be liable for any sanctions if he doesn't know about the bankruptcy, and if he does, at that point, he's under obligations to turn over the property. He's got protections, as you just said, under 542, but the respondent says that he can also get protections under, I guess it's 363. So what difference does it make as a practical matter whether you proceed under the stay provision or under 542? One difference is that Section 542 has exceptions to turnover. For example, a creditor does not have to turn over property that is of inconsequential value or benefit to the estate. So if, for example, the IRS has repossessed property and its tax lien on the property greatly exceeds the value of the property itself, it may be permitted to keep that. But under Section 362.A.3, it refers only to property of the estate. So the IRS would be required to relinquish possession of that property. Go ahead. I would note that the respondents say you can use the specific from the general canon to sort of import the exceptions from 542 into 362, but that's not the way the canon works. In RADLAX, Justice Scalia explained that where you have a specific provision in a statutory scheme that governs a particular matter, the court will not read another more general provision that could be read to cover something to cover the matter that is specifically controlled by the other provisions. So Section 542 covers turnover, and therefore Section 362 does not. Thank you, Counsel. Justice Thomas? Yes, thank you, Chief Justice. Counsel, I know others have sort of dismissed this as somewhat metaphysical, but I'm not so sure that's right. Having control of something or having possession of the car sitting on a lot, how is that exercising control as opposed to, I see if you disposed of it or you sold it, you auctioned it, that would be exercising control over it. But just having it sitting on your lot, how is that exercising control? I think that's exactly right, Justice Thomas. I think that when Congress used the term, the phrase, an act to exercise control, it was contemplating some affirmative act. I think most naturally an act to seize control of something, but it could also be an act such as selling the property or reallocating the property. But I do think that passively retaining property doesn't quite fit as an act to exercise control. We've offered other arguments such as the fact that this is at stay and the fact that reading it as respondents would override exceptions. Those reinforce, I think, what you're getting at, which is the intuitive reaction that simply leaving a car on a lot is not undertaking an act to exercise control. If we accepted that petitioner's view under, with respect to 362, what would be left of 541? Of 541 or 542? I mean, 541 established... I think very little. 542 turnover, yes, yes. That's exactly right, Justice Thomas. So very little would be left of Section 542. As noted, petitioner's interpretation would essentially follow 542, and that simply isn't permitted. Again, the canon of specific from the general, which respondents themselves try to cite, dictates that you should interpret Section 542 as more specific provision to govern turnover. Thank you. Justice Breyer? No, go ahead. I'll pass. Thank you. Justice Alito? A big part of your argument and petitioner's argument is based on 542. Can we decide this case without saying anything about how 542 works? Would the decision amount to anything if we did that? Yes, because it would establish that Section 362A.3 cannot be read to broadly compel turnover of all property of the estate at the moment the bankruptcy petition is filed. And I think that the court could reach that conclusion based on the text of Section 362A.3 alone by pointing to the fact that it imposes a stay, which commands the preservation of the status quo, by pointing to the fact that it uses the term an act to exercise control, which suggests an affirmative act, and frankly, by pointing to the fact that every other provision in Section would alter the status quo with respect to the debtor-creditor relationship. Well, a potential difference that might matter between the two provisions is that 362 is automatic, and it's disputed whether 542 is automatic. Is that an issue we can avoid discussion? I think so, insofar as you can say that the automatic sanctions provision of 362 does not the only way to get automatic sanctions, and that presumably is why they're advancing this case. But that's not a reason to sort of start distorting Section 362 to read it in different ways, and I think you can just say that. Respondents' belief that Section 362 is necessary to obtain sanctions is not an appropriate basis to distort the plain meaning of 362. Thank you. Justice Sotomayor? Counsel, there are some courts that require automatic turnover of a student's transcript. If a bankruptcy is filed by the student and the university refuses to release the transcript upon request, those courts come to the conclusion that the decision to retain control of the transcript and not release it when demanded is a violation of the code and of the automatic stay. It seems to me that your position would be that those cases are wrong. Am I right? No, Justice Sotomayor. There is no act that your refusal to do an act that the code requires to turn over property of the estate. Forget about the sanctions. I'm talking about just the refusal to turn over something that's requested without taking the act the code requires for you to go to the bankruptcy court and ask for security or take some other action to protect yourself. You're taking the control sufficient to violate the automatic stay. Justice Sotomayor, the transcript cases are decided under section 362A-6, not 362A-3. And in the transcript cases, some courts have decided that when a university refuses to turn over the transcript, they are essentially trying to collect on a debt. And section 362A-6... That some turnover provisions are done by way of motion and not adversary proceedings. Are you taking a position on whether that's permissible under the bankruptcy code, to go by motion? Adversary proceedings are dictated actually by the rules of bankruptcy, and those could obviously be changed. It's not in the code itself, so we don't think that that's required by the code itself, but it is required under section 7001, I believe, of the bankruptcy rule. So that would have to be changed to permit a more expedited proceeding? That could be changed. I would also say that bankruptcy courts have the ability, so if somebody initiates an adversary proceeding and the creditor has only completely frivolous defenses to turn over, that adversary proceeding could be decided very, very quickly. And in fact, the creditor who has put forward frivolous defenses could be subject to sanctions, for example, de-shifting. So I think that even the existing system is sufficient to cope with the circumstances. Thank you. Justice Kagan? Mr. Bissett, I'm wondering whether you would respond to a different set of intuitions about what this text means. So two of them. The first is that stay just really means stop. Say your hand means stop doing something. And the second on the question of exercise and control is that when I retain property that is the debtor's and that the debtor wants back, I am exercising control over that property. So why doesn't the text, in fact, lean the other way? I think those two questions are actually interrelated. So the term stay is, of course, part of the operative text of 362. And I do think there's a meaningful distinction between Congress using the very specific language that filing a bankruptcy petition will operate as a stay and Congress merely barring a particular act. And I think that's significant because, as this court said in the Ken, a stay is something that prevents the authority to alter the status quo. So I do think stay has to be doing some work there. As to exercise control, I think part of that answer goes back to my stay response, because I think even if you thought that exercising control might plausibly include nearly passive retention, I don't think that that's consistent with the use of the word stay. I would also say that I think what respondents, I think now are pointing to as the act is simply refusing to surrender when they make a request. I think that's what the import of footnote three of their brief. And I think that doesn't seem like an act to exercise control. That seems like a refusal to undo a pre-bankruptcy act to exercise control. They want to undo the pre-bankruptcy seizure. Looking to sort of more underlying principles, why isn't holding on to a debtor's property until they pay you a debt from prior to the bankruptcy? Sounds like that's the kind of conduct that the automatic stay provision should police. I think that if you were hanging on to the property to use it as leverage to encourage debt collection, then you might be violating section 362A6. But I don't think that the automatic stay provision is designed in any way to improve the status of the debtor. It's merely designed to preserve the status quo. Now, there are other provisions that do improve the status of the debtor, like 542, like the avoidance provision. And I think in Whiting Pools, the court sort of looked at all of those groups together as things that do give the debtor a slightly better position post-bankruptcy. But the automatic stay preserves the status quo. Thank you. Justice Gorsuch. Good morning, counsel. We've discussed 542, and we've danced a little bit around 362A6. But I'd like to just, if I could get an answer to this question, I'd be grateful. Why isn't Chicago's conduct a violation of 362A6? We don't need to engage in the metaphysics of A3. The state means stop any act to collect a claim against the debtor that arose before the case, the bankruptcy case. Why isn't holding onto someone's car at least that? The Seventh Circuit held that it didn't need to reach that question. I would just, and we, the government isn't taking a position on the specific facts, but I would note that merely retaining property is not always an act taken to collect a debt. For example, in Whitingpool, the IRS had seized property, and they weren't trying to get the debtor to pay them back. They actually just wanted to sell the property and get whatever money they could. So I do not think that every time that a creditor retains property, they're going to necessarily be violating section 362A6. Well, why isn't what you just described an act to collect on a debt? To seize a car, to seize the property and either get a payment from the debtor or use the property to collect on the debt by selling it? Well, so in Whitingpool, if you actually wanted to sell the property in order to get money, so in order to collect on the debt, you do have to make a motion to list stay. And in Whitingpool, that's what the IRS was in the process of doing. They knew that merely possessing the property didn't put them in violation of the automatic stay. But then they wanted to actually sell it, and they worried that would, in fact, collect on a debt or perhaps realize a lien. And so they were making the motion to list stay. And it's at that point that all of the questions kicked in about whether actually they were compelled to turn it over. Well, why isn't just possessing it? I guess we're still dancing around it, but why isn't merely possessing it with the intent to do one of those two things that we just talked about? Any act to collect the debt, that is any act? I think reading it that broadly, again, would come in conflict with the meaning of stay, which is a term that denotes a command to preserve the status quo. Reading it that broadly would also fall afoul of what this court said in Strumpf, which is that it will not read the automatic stay to override the exceptions in 542A. So even if you thought- Justice Kavanaugh. Thank you, and good morning, Ms. Sinzak. In isolation, as I understand your position, but correct me if I'm wrong, you're saying in isolation, holding property might be exercising control over the property, perhaps, for purposes of 362. But when you look at 362 together with 542, the turnover provision, then you realize that holding property cannot be exercising control of the property. Is that, or at least an act to exercise control, is that an accurate summary of your position, or what nuance would you add? I think that's a fair description. I would say that I think you can get our understanding from section 362A.3 alone, because of the use of the term stay, because of the general statutory interpretive principle that says to read acts in a list in the same way. All of the other acts are clearly those that would alter the status quo, and an act to exercise control should be interpreted the same way. But otherwise, yes, we're sort of saying, as this court said in Timbers of Inwood Forest, maybe you could look at that provision in isolation, but you can't look at the bankruptcy code, snippets of bankruptcy code text, and just ask what they mean in isolation. You have to look at the context of the statute as a whole. If your position were to lose here, how would that affect day-to-day bankruptcy practice? It would put a lot more pressure on predators to surrender property where they believe that they have fair defenses to turnover under section 542. So again, the IRS, if it has to steer automatic sanctions under section 362A.3, might feel more pressure to surrender property, even when it believes that it is clearly covered by the exception for property of inconsequential value or benefit. So I think it essentially gives debtors a sort of cudgel to force predators to surrender property they might be very well entitled to hold on to. Thank you. A minute to wrap up. Counsel? Thank you, Mr. Chief Justice. I would just reiterate that read in full section 362A.3 is best interpreted to prevent acts that would alter the status quo with respect to the possession or control of a state property. Reading the automatic stay as respondents proposed would ignore the plain meaning of the term stay. It would override the express exceptions to turnover in section 542A, and it would be at odds with the well-established role of the automatic stay provision in the bankruptcy scheme. Thank you. Thank you, Counsel. Mr. Weedon? Thank you, Mr. Chief Justice, and may it please the court. These cases present a single question. May a creditor stop a Chapter 13 debtor from recovering property that the creditor seized before the bankruptcy filing if the debtor does not have a court order directing a return? The three reasons reflected in the court's questions today, the creditor may not prevent recovery of the property. First, the automatic stay in section 362A.3 of the bankruptcy code provides that a creditor may not act to exercise control over a debtor's property. The critical language is exercise control. Unlike action to obtain possession of property, a future event that the stay also prohibits, exercising control over property is ongoing action, and the stay expressly Second, the automatic stay works together with the turnover provision in section 542A of the code, which commands that any party holding estate property shall deliver it to the trustee or debtor. This provision operates automatically with no requirement that the debtor obtain a court order mandating compliance. Third, the automatic stay and the turnover provision support a major purpose of the bankruptcy code, to place all estate property under the court's jurisdiction and allow the trustee or debtor to control the property from the outset of the case. This court recognized in Whiting Pools that an effective reorganization of a business or individual will not likely succeed if creditors can withhold the state's property to get better treatment for themselves. The automatic stay protects reorganization. It allows greater payments to all creditors by preventing any one with the code, returning seized cars when debtors request it. When the city changed its policy and refused to return my client's cars, it acted to exercise control over them, a direct violation of the automatic stay as the Seventh Circuit correctly held. Counsel, the basic question here is when an entity exercising control over the property of the debtor has to turn over the estate, why wouldn't we look to the section of the code entitled Turnover of Property to the Estate to figure out the answer to that question? I think that that section, Section 542A, works hand-in-hand with the automatic stay in Section 362A3. So yes, we do look at 542A, which tells us that as of the outset of the case, there's a duty to turn over, but 362A3 enforces that obligation. And what we have argued is that it arises when the debtor requests the return of the property. Well, but they lose the protections under 542A unless you incorporate them by reference under 363A. And I'm just wondering, well, why don't you assume those protections apply directly under 542 rather than indirectly under 363? The important thing about Section 363E is that it arises on request of the creditor. If a creditor has not requested adequate protection, there is no automatic allowance and no obligation on the debtor's part to provide it. Well, what if you get the protections under 363A that you would get under 542, and presumably a creditor would not be subject to any kind of sanctions before it learns of the bankruptcy. What is the practical difference between the two provisions? The practical difference is one of timing, and I think that's been reflected in some of the questions that the court has asked. If the debtor has to wait for what could be on the return of seized property, the debtor's ability to reorganize is likely to be lost. By a period of a couple of weeks? Yes, because the debtor needs the card to get to work. It needs the card to have the income to support a family, and if that is lost, the debtor is going to be unable to make the payments that would be required to keep the case going. Your friend on the other side, Mr. Goldblatt, says on page 15 of his brief that the parties agree that long-settled bankruptcy law permitted a creditor to retain possession of repossessed or impounded property pending the outcome of a turnover proceeding. Is he right that you agree with that? No, he is not correct about that. We cited the O'Leary case, a bankruptcy case from Idaho, with a proposition that section 542A applies when the case is filed, and if there's a request to have the property turned over, 542A itself requires that that be done without a court order. But the important thing is that when the automatic stay was amended in 1984, it provided a more effective enforcement mechanism than what existed before 1984. Thank you, Counsel. Justice Thomas? Counsel, if the two provisions work together, wouldn't you expect that there'd be a cross reference? It's really not necessary, Justice Thomas, because they so clearly deal with precisely the same issue, control and possession of estate property. So they treat the same issue, and when we have two provisions of a code that treat the same issue, we read them as possible, and it's certainly possible here. And on that score, it would seem to me that you would actually make 542 somewhat superfluous. No, there's an overlap, as frequently happens in the bankruptcy code, but 542A does considerably more than 362 does. 542A directs the party to whom property of the estate ought to be delivered, and it imposes a requirement of accounting for any loss in the value of the property. So 542A, even with the enforcement mechanism of 362, is entirely viable. So you said that, or at least I think I heard you say that the difference between proceeding under 542 versus 362 is a matter of a couple of weeks. Oh, it could be more than that. It could be much more than that. If the creditor said, you have to demonstrate adequate protection, and there was a question about whether the value of property was sufficient to provide adequate protection to a creditor, it could involve expert witnesses, discovery, and a proceeding that went on for many weeks. I'm still interested, and I know this is, as I've said before, this is deemed to be somewhat metaphysical, but I'm still having a problem seeing that merely having a car on an impoundment lot is exercising control over it. I understand if the city wanted to dispose of it to auction it off, that would be exercising control over it, but merely passively holding it. Would you explain to me again why that is exercising control? Yes, Your Honor. The question arises when the debtor asks for return of the property. At that or the creditor continues to hold that property against the ability of the debtor to obtain it, and that holding of the property against the debtor's wish to have it turned over is an exercise of control, in the ordinary meaning of the words. I see that it would be exercising control if the creditor or the city actually delivered the property. I don't see how that is anything more than passively holding property rather than acting to exercise control. Your Honor, if you imagine the debtor with a key to the car coming to the gate of the impound lot and trying to get in so that the debtor can drive the car away, I think it would be clearer that there's plainly an act to exercise control as the debtor is prevented from gaining access. Thank you. Justice Breyer? Thank you. I think my question is trying to clarify what the Chief Justice asked, where I tended to have the same questions. I'm having a hard time figuring out what the difference is between the two sections. If you're right, and a creditor has some property like a car, you say 362 says, turn it over immediately. And if you don't, you're going to be in trouble. And 542 says just the same thing. 542 says shall turn it over. And then there's some exceptions in 542. But for the most part, you read those into 363, except I don't know what happens to life insurance. But in both cases, I guess if you're right, and the city needs protection, it can say, Judge, we're ready to give him the car, but please give us protection. And he can do that with you right or wrong. So I can't get the difference in my mind. Your Honor, the difference again, is a question of timing. If the debtor needs to seek an order from the court to have the property turned over, there could be a very long delay between the time the car is seized and the bankruptcy is filed and the time that the debtor ultimately gets that court order. On the other hand, if there's a violation of the automatic stay, if the automatic stay applies, there's an immediate obligation. I see that. But I also say, isn't that counterbalanced in the fact that there's no other security? If a creditor has to turn it over immediately, he may lose the car because of time, when he shouldn't. And so I find that a kind of balanced fix of one habit over the other. The difference is in the speed with which the creditor can get relief from the automatic stay. Section 363E allows even ex parte relief from the automatic stay on an immediate basis. So if the creditor turned over the car and immediately sought relief from the stay, within a matter of hours, the court could order that return. And let me go even further. The automatic stay can be annulled. Yeah, but he still has to deal with 542. On your theory, he has to deal with both. That's completely true. But the point is that if there is any redundancy between the two statutes, the redundancy should be resolved, as the Busek case said, by harmonizing them. And here, there's no difficulty in harmonizing. But to get back to your point, the difference in the balance of harms is extraordinary. The debtor can get relief under Section 542 only after a proceeding that could take a very long time to result in help for the debtor. The creditor, on the other hand, can get relief from the automatic stay almost immediately, and in the case of annulment, immediately. So that really looking at that just gives another reason why the congressional approach to bankruptcy put all of the property in the hands of the debtor or the trustee at the outset of the case is appropriate to enforce. Thank you. Justice Alito? Well, to follow up on Justice Breyer's question, if you are correct that 542 is self-executing, then I don't really understand your answers to his questions. Could you just take a minute to clarify that? When we say self-executing, I think there's a need to look at that a little bit more. It's certainly true, as we understand it, Section 542 requires the turnover of property to a debtor at the outset of the debtor's request for that self-enforcing in the sense that the debtor would not have to take action to enforce the claim if it's being violated. If the creditor does not turn over property under 542, the debtor would have to go into court with the creditor still holding the property, and the creditor would quite possibly argue there's no adequate protection for our claim, and the matter could drag on for a considerable length of time. Whereas with the automatic stay, the property must be turned over, and then the creditor seeks relief, and again that can be done quickly. But the long and the short answer to your question is... The creditor seeks relief after the car is turned over. The city would have to turn over the car and then ask for adequate protection. Correct. It could not condition the turning over of the car on the provision of adequate protection. No, because that again invites long negotiation with the creditor having all of the leverage to achieve more than it would get out. Let me ask you, let me ask you a different question. Before 1984, would a creditor's refusal to turn over property have violated 362A3? No. So your argument has to be that Congress made this very substantial change in the way this situation is to be treated under the Bankruptcy Act simply by adding without any cross-reference or other clarification the word exercise control, the phrase exercise control. It certainly made a change, but it was not a particularly significant change. 542A already required the property to be turned over. All that 362A3 added was a more efficient enforcement mechanism. I thought you just told me that it makes a big difference. It makes a difference. Excuse me. I thought you just said it makes a big difference whether it's under 362 or 542. And then you told me, well, Congress didn't need to do more than just add the words exercise control because it was no big deal. It makes a big difference in the effectiveness of the enforcement mechanism, but it doesn't make a big difference in the substantive obligation to turn over the seized property. It makes a difference. According to your argument, it makes a difference in the relative rights of creditors and debtors. And I don't know which is better as a policy argument, but I don't see how you can have it both ways. Either it's important or it's not important. And if it's important, then you have to explain why Congress would have chosen to do it in this very oblique fashion. The difference in the enforcement mechanism is important, but the underlying substantive obligation was not changed. And the language in 362A3, as we argued from the beginning, could not be clearer. There is an obligation to cease exercising control over the estate property. And that requirement to cease exercising control necessarily means turning over the property to the party entitled to possess it. Thank you. Justice Sotomayor. Council, where in 362A3 do you see a requirement that the debtor has to turn it over only upon request? I thought under the terms of the automatic stay, the minute the bankruptcy proceeding is filed, the automatic stay requires immediate turnover in other situations without demand. Where do you get the demand? Your Honor, this is a necessity of interpreting a particular provision of the code in context. It may very well be that a trustee or a debtor in possession does not want to have possession of the property. Trustees and debtors in possession are given the option of abandoning property that is burdensome to them. And of course, the provisions of 542A are consistent with not turning over property of inconsequential value. Moreover, a debtor in Chapter 13 has the ability to allow the creditor to keep the property as satisfaction of the creditor's claim under Section 1325A5. Council, if I might interrupt, you're reading something into the provision. Why isn't it more natural to read 542 as controlling when there's been no active exercise of control? And that makes a debtor's request the acting principle. Under 542A, the trustee has to property. We don't have to make anything up. It's right there. There's nothing in Section 542A that requires any action by the debtor or trustee in order for that provision to go into effect. The question is, what is the mechanism for enforcing it? And that, of course, would require some action by the trustee or debtor. Council, getting outside the legal arguments on a practical level, what would have to be done? I know we wouldn't do it. Congress would or whatever appropriate bankruptcy committee would. What would have to be done to expedite this proceeding for things like cars in a way that doesn't give you everything you want but provides a reasonable opportunity for a debtor or a creditor like the city to come in and ask for adequate assurances of protection? Your Honor, of course, I believe that they have that right now. Council, I just asked you to go outside this. Assume I ruled against you. All right? Not me, but the court. You've lost your legal argument. All right. What would be your then next step in Congress or wherever is appropriate? And what kind of legislation to ensure the purpose I spoke about? Well, there could be language added to Section 542 or there could be language added to Section 362A3 that made it abundantly clear that the interpretation that we're proposing right now is the correct one. All right. You're not helping. Okay. Thank you, counsel. Justice Kagan? Mr. Weddock, the city of Chicago here and the SG2 argues that the only thing that the automatic state provision is about is maintaining the status quo. So I just thought I'd ask, is there any other circumstance in which the automatic state provision compels an action that alters the status quo or is this one the only one in your view? No. To some extent, Justice Kagan, that's already been discussed. The Solicitor General acknowledged that under Section 362A6, a creditor may very well need to turn over to the debtor a transcript of their grades. That requires action to prevent the ongoing collection effort that was maintaining that transcript. But similarly, in Section 362A1, a creditor is required to stop any collection action in judicial or administrative proceeding from going forward. And that requires that creditor to take action to stop things like garnishments. It's not enough for them to say, we don't need to do anything for the garnishment to go forward. We just allow that to take place, maintaining the status quo. No, they have to take action to stop the garnishment. And I think the underlying issue here is that the automatic stay is intended to prevent collection activity from going forward. Most of the time, that can be done by stopping any new action from taking place. But sometimes, as in this case, it requires the stopping of continuing action. And how about this? I take it that your argument is essentially that 362A3 becomes the enforcement mechanism for the 542 provisions. But is there another example like that, where the automatic stay enforces an obligation that's imposed by another different provision of the bankruptcy code? Yes, there is. Section 521 imposes many obligations on the debtor, including the obligation to turn over property to the trustee. But the automatic stay enforces that obligation. And so it puts teeth into the 521 obligation. And if you were right that the automatic stay is an enforcement mechanism, wouldn't we expect the two provisions, 362 and 542, to be completely the same in scope? But as Ms. Sunset pointed out, they're really not. There's the exception for things of minimal value in 542. There are some other exceptions. But they're not coterminous. If one were really enforcing the other, should it be? The general rule that was announced by this court in Jermaine is one that requires consideration of both statutes and harmonizing them to the extent possible. And here, the differences between the two are almost insignificant. A debtor is not going to be asking for the return of property of inconsequential value to the debtor. There's not an insurance issue here. And there's not a situation where the property has already been transferred by the creditor. And those are the only exceptions in 542A. So 362A3 and 542A line up almost perfectly. My final question is, there's a lot of difference between you and your friends on the other side about how 542 operates and what it requires. And Justice Alito, I think, asked before, you know, do we have to decide those questions? So a similar question to you, does your argument really depend on a particular view of what 542 does and how it operates? Or could we, for example, take Chicago's view and you would still win? 542A is not essential to our argument. 362A3 on its own clearly says that the creditor may not continue to exercise control over the property. 542A is helpful, though, as I indicated before, in indicating who should get possession of the property and what should be done if there's a decline in the value of the property while it's being held by the creditor. Thank you, Mr. Well. Forsage? Good morning. I'd like to start with the 1984 amendments. Before 1984, the statute prohibited obtaining possession. In 84, they added the exercise control provision. And isn't there some linguistic gap in there, for better or worse? Congress never talked about just retaining possession. It didn't speak about keeping possession. It didn't speak about anything else about possession. It went on to add new and different language about exercising control. What do we do about that? Well, I think the best thing to do is to look at what would have happened if the interpretation proposed by the city were put into effect, really. And that is, it would have used the property of the estate. The simplest thing in the world or the most natural of Congress wanted to get at retaining possession, just to say obtain or obtain or retain possession, something like that? That certainly would have been another way to do it. But I think that exercising control is that same kind of continuous action. Okay. Yeah. I'd also like you to address the point that nobody seems to think that it would be acceptable for the city to just simply abandon these cars. And that, in fact, as I understand it, your position is that on request, or at least on request, maybe automatically, the city must hand over the car to the trustee. But where do we get that in 362? Nothing speaks to handing anything over. It just is a stay, as Judge McCabe put it on the 10th Circuit. It's a stay, not a go provision. What do we do about that? Well, I'm not sure that I understand the question entirely, but certainly- I'm sure you do, friend. The point is you want to use this as a self-executing requirement to hand things over, not merely abandon the property. And there's nothing in this provision, unlike 542, that speaks to that. That's correct. And so it would not be a violation of the automatic stay if the city were to leave the car unlocked in front of its impound lot and invite the debtor or anyone else who had a key to drive it away. That would not be a violation of Section 362A3. However, it would subject the creditor to violation of 541, or at least an obligation they have to account for any loss of value. So they really do work together. What do we do about the fact that A6 seems to be the much more natural provision for your argument than A3? That's to reflect the reality of the any number of overlapping provisions. 362A6, for example, talks about any action to collect. Well, that would include putting liens on the property, enforcing an obligation by sale, all sorts of things that are separately prohibited by the automatic stay would be incorporated under 362A6, but that doesn't prevent each of them from being applied. Let's say that we thought your argument under A3 was unsuccessful. Have you preserved an A6 argument? Is it something that could be remanded for consideration? Absolutely. In fact, one of the cases that was decided, the Shannon decision, has expressed findings by the bankruptcy court that A6 was violated by the city. So in the event that the A3 round of violation to stay were not accepted by the court, A6 would certainly have to be something considered. Thank you. Justice Kavanaugh? Thank you, Chief Justice, and good afternoon, Mr. Wadoff. Just to follow up on Justice Gorsuch's questions at the beginning of the colloquy with him, the 1984 amendment, he made the point, and I think you agreed, it obviously would have been simple enough to put retained possession in there, or keep possession, as Justice Gorsuch said. Is your point that exercise control covers that and covers other things? Is that the nature of your response to him? I just want to make sure I have that nailed down textually. Exactly. That is precisely our position. Can you give the universe of things, or at least sample of things that are encompassed within exercise control? Well, among the things that would be encompassed is the exercise of control over intangible property, which is one of the things that the city has argued. And that's one of the things that's covered, but also the exercise of control over tangible property. Then I'm going to ask you the same question I asked the Assistant to the Solicitor General in thinking about debtors and creditors, and also the States. If you were to lose this case, what would be the effect, in your view, on day-to-day bankruptcy practice in bankruptcy courts? It would make Chapter 13 much less effective, potentially, because it would put debtors in the position of not being able to recover property that's essential to their livelihood. And so Chapter 13 filings would decrease, but also, interestingly enough, I believe payments to creditors would decrease. Payments to the other Chapter 13, and even payments to the City of Chicago itself, because in Chapter 13, they would probably get more money in payment of their claim than they would get by having that car liquidated in their impound lot. Thank you very much. Thank you. Mr. Weedoff, you can take up to 10 additional minutes, and during that time, if any of my colleagues have questions they did not have an opportunity to ask, they can ask them during that time. Thank you, Mr. Chief Justice. I believe that the questions from the Court today have spotlighted the underlying basic bankruptcy policy, which is that bankruptcy trustees and debtors in possession must be given prompt access to estate property. The automatic stay advances this policy by preventing creditors who hold the debtor's property before the bankruptcy filing from acting to control that property while the case is pending. If the creditor were able to continue to exercise control over the property, the creditor would have leverage over the debtor. The debtor who needs the seized property would be willing to give the creditor better treatment in a Chapter 13 plan or make additional payments at the outset to avoid the delay that otherwise would occur. That kind of leverage in support of one creditor over the body of creditors as a whole is something that the automatic stay is directed to prevent. Counsel, I'm sorry. This is if a turnover provision under 542 would result in the debtor coming in and saying, I need the property to earn a living. Under 542, you can come in and say, I need security or raise any other sorts of defenses that would delay the proceedings. You get to keep the property. Isn't the gamesmanship the problem here? Who's going to suffer the loss? To some extent. It's always the estate who suffers the loss under your theory because the estate is not getting back an instrument for the livelihood of the debtor. The estate is getting that back under the interpretation we've given, but again, the question really is, what does the statute say? I want to raise the approach that was taken by Whiting-Pools again. Whiting-Pools said, and I'm quoting now, Section 542A simply requires the creditor to seek protection of its interest according to the congressionally established bankruptcy procedures rather than by withholding seized property from the debtor's efforts to get it back. Whiting-Pools recognizes that this balance between the debtor's need to reorganize and the creditor's need to have the property is balanced in favor of the debtor while the matter is being resolved by the bankruptcy court. And again, the creditor can get very prompt relief from the bankruptcy court upon an appropriate... And you believe a motion instead of an adversarial proceeding would be adequate to get the property back by the debtor? To get... No, well, yes, because the motion can be brought to enforce the automatic stay, so absolutely. No, I'm not talking about the automatic stay. I'm talking about under 542. The debtor could make a motion. The debtor could make a motion under 105A to enforce Section 362A3 and Section 542A, yes. And 542A. Okay, thank you, Counselor. But what I wanted to conclude then is by saying that the rights of the creditor holding the property are protected by the automatic stay, but the creditor has to take the action to enforce those rights, and it can do it very quickly. The delay that the city would impose on the debtors and trustees would be fatal to accomplish the reorganizational purposes of the bankruptcy code. The Seventh Circuit's interpretation of the statutory language is not only correct according to its plain meaning, but correct according to that underlying bankruptcy code policy of encouraging reorganization. And so for all of those reasons, we believe the Seventh Circuit's interpretation is correct and its judgment ought to be affirmed. Thank you. Mr. Goldblatt, three minutes for just a few quick points. First, Justice Gorsuch asked both of my friends about the role of 362A6 and whether any of these actions are prohibited as prohibited debt collection activity. I think it's important to bear in mind, as this court's opinion in Whiting-Pools explains, that the bankruptcy code strikes a careful balance between the rights of debtors to marshal the assets of the estate on the other and provides specific rights and protections to secured creditors. And where a secured creditor is seeking to vindicate those rights by holding the property in order to maximize its recovery as a secured creditor, whether that's through adequate protection or the treatment of its claim under a plan, while in ordinary English one might call that debt collection activity, that isn't prohibited by A6. That's simply acting to vindicate the rights that the code provides. The Chief Justice asked my friend about whether we agreed about the pre-1984 conduct. I'd refer there to my friend's 2018 article in which he says that before the 1984 expansion of Section 362A3, if a creditor was unwilling to return collateral, the debtor would have to seek an order for turnover under Section 542. I'd also like to address the various textual indications that the other side's reading of this statute can't be correct. It requires a host of sort of atextual workarounds. For example, footnote 3 of the red brief says that although the text says that the automatic stay goes into effect upon the filing of the case, the obligation to turn over a state property is not triggered until the debtor calls you up and asks you for it. They have similar trouble with the exceptions to turnover. On page 47, they say that no one is likely to seek turnover of property of inconsequential value, but then on page 48, they acknowledge that if someone were to do that, the court could invent an exception to 362A that mirrors the exception set out in Section 542A. None of that has any home in the actual text of the statute and makes clear that their reading of Section 362 can't be correct. Finally, in response to Justice Sotomayor's question about the requirement of an adversary proceeding as opposed to a motion, the principal difference is that an adversary proceeding provides more elaborate notice. And this is just a practical point about what bankruptcy judges do in actual bankruptcy courts. In most bankruptcy courts, if a creditor responds to a motion by saying, I should have gotten an adversary, a bankruptcy judge will say, did you get actual notice? And if you did, why do you care that much about the caption on the paper? So while it is true that Rule 7001 says what it does and that the Rules Committee can address that if it thinks appropriate, in the real world, this isn't a problem that is plaguing bankruptcy courts in actual practice. Thank you, counsel. The case is submitted.